UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRENDA L. MARTIN,

        Plaintiff,

v.

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION AND ORDER**
**05-CV-0536**

## PROCEDURAL HISTORY

1.    Plaintiff Brenda L. Smith challenges an Administrative Law Judge's ("ALJ") determination that she is not entitled to supplemental security income benefits ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges she has been disabled since January 1, 2003, because of chronic obstructive pulmonary disease, diabetes, depression, and migraine headaches.

2.    Plaintiff filed an application for SSI on June 23, 2003. Her application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Pursuant to Plaintiff's request, an administrative hearing was held on November 8, 2004, before ALJ Joseph F. Gibbons, at which time Plaintiff and her attorney appeared. The ALJ considered the case *de novo*, and on November 8, 2004, issued a decision finding that the Plaintiff was not disabled. On March 3, 2005, the Appeals Council denied Plaintiff's request for review.

3. On May 2, 2005, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant SSI benefits to Plaintiff.[1] The Defendant filed an answer to Plaintiff's complaint on August 15, 2005, requesting that the Court dismiss Plaintiff's complaint. Plaintiff submitted a Motion and Memorandum of Law to Set Aside the Commissioner's Determination on January 17, 2006. On April 3, 2006, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

## DISCUSSION

**Legal Standards and Scope of Review:**

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615

---

[1] The ALJ's November 8, 2004, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under Northern District General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined

under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

    7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

    8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

    9.    In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since January 2003 (R. at 17)[3]; (2) The medical evidence establishes that Plaintiff has diabetes mellitus, Type II, asthma, obesity, history of hypertension, status post bilateral carpal tunnel surgery, history of depression, and history of pancreatitis, but does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 (R. at 17); (3) The Plaintiff is unable to perform her past relevant work as a deli worker, a medium work activity (R. at 17); (4) The Plaintiff has the residual functional capacity to perform a full range of light work on a sustained basis (R. at 17); (5) The Plaintiff is 35 years (younger individual), with a high school education, and past unskilled work experience, and therefore, Rule 202.20 of the Regulations directs a finding of not disabled (R. at 17); and (6) The Plaintiff has not been disabled within the meaning of the Social Security Act at any time through the date of this decision (R. at 18).  Accordingly, the ALJ determined Plaintiff was not entitled to supplemental security income under Sections 1602 and 1614(a)(3)(A), respectively, of the Social Security Act (R. at 18).

---

[3] Citations to the underlying administrative record are designated as "R."

**Plaintiff's Allegations:**

10.     Plaintiff challenges the ALJ's determination that Plaintiff is not disabled and asserts the ALJ's decision is not supported by the substantial evidence of record.  Specifically Plaintiff alleges that (1) the ALJ failed to properly evaluate the testimony and credibility of the Plaintiff and her allegations of severe impairments, (2) the ALJ failed to adequately develop the record and make a proper determination concerning Plaintiff's impairment of depression, and (3) the ALJ inappropriately used the Grids to determine the availability of jobs available to Plaintiff in the national economy.  Each of Plaintiff's allegations will be addressed in sequence by the Court.

**ALJ Failed to Properly Evaluate Credibility:**

11.     Plaintiff's first challenge to the ALJ's decision is that he failed to properly evaluate the testimony and credibility of Plaintiff and her allegations of severe impairments.  See Plaintiff's Brief, p. 1.  Specifically, Plaintiff claims that when assessing her credibility, the ALJ failed to consider how her depression, fatigue, carpal tunnel pain, problems with sitting, standing, and walking, coupled with side effects from her medications, affected her ability to function in the workplace.  See Plaintiff's Brief, p. 5.  Further, Plaintiff asserts, "the ALJ failed to make findings with the regard to the specifics of why he did not find Plaintiff credible," and simply made a conclusory statement that he had considered Plaintiff's testimony, but failed to accept or reject it.  See Plaintiff's Brief, p. 5-6.  Plaintiff claims she is entitled to a new hearing as Social Security Ruling 96-7p requires that, "The reasons for the credibility

6

finding must be grounded in the evidence and articulated in the determination or decision." See SSR 96-7p.  The Court disagrees and notes the ALJ provided ample specifics in his decision as to why he did not find Plaintiff's subjective claims of disabling pain, fatigue, depression and other limitations credible.

As an example, Plaintiff described her symptoms of depression as crabbiness, irritability, and the desire to hide in a corner once or twice a week (R. at 253-254).  Plaintiff alleged her treating physician and his nurse practitioner prescribed Wellbutrin for the treatment of her depression, and would not take her off the medication or put her on a different type of medication (R. at 253).  In his decision, the ALJ noted Plaintiff reported a history of depression, but a careful review of the evidence revealed she was not undergoing mental health treatment (R. at 15-16).  Reports from Plaintiff's primary care physician and his nurse practitioner did not indicate Plaintiff had any significant problems with depression (R. at 16, 108).  Plaintiff's nurse practitioner reported only that Wellbutrin was prescribed as an aid to help Plaintiff cut down on her smoking, rather than as an anti-depressant or anti-anxiety medication, as alleged by Plaintiff (R. at 86, 103, 256).  As required by 20 C.F.R. 404, Subpart P, Appendix 1, Section 12.00ff, the ALJ evaluated Plaintiff's medical and testimonial evidence concerning her claim of depression and found her depression was not severe (R. at 15-16).

With respect to Plaintiff's claim of extreme fatigue, the ALJ noted in his decision that she reported being very sleepy as a side effect of her daily

medications, and claimed to sleep more during the day than at night (R. at 15).  However, Plaintiff's self-described sleep habits appeared to be normal (R. at 250).  She reported waking in the morning between 8:00 A.M. and 10:00 A.M. and going to sleep in the evening between 10:00 P.M. and 11:00 P.M. Id.  She napped during the day. Id.  In July, 2003, Plaintiff reported she awoke at 4:00 A.M. to drive her brother to work, and then returned home to sleep until 11:00 A.M. (R. at 94).  No information is contained in Plaintiff's medical evidence that she reported to her physicians, including State agency examining physician Dr. Kasprzak, extreme fatigue as a side effect of her medications (R. at 107-108, 116, 119, 124, 125-130, 132, 134, 136, 138, 140, 142, 144, 146, 148, 150, 152, 154, 156, 160, 162, 164, 166, 168, 170, 172, 174, 176, 178, 180, 182, 184, 188, 189-193, and 208-221).  Plaintiff's medical records reflect that she complained of having "no energy" on only one occasion when she was treated for a cough and nasal congestion (R. at 186).  The ALJ clearly evaluated Plaintiff's evidence of her claim of severe fatigue, but did not find that Plaintiff's fatigue, either alone or in combination with her other ailments, contributed to a disabling condition (R. at 15).

   Plaintiff further complains that the ALJ failed to properly evaluate her testimony that she had pain and other difficulty sitting, standing, walking, and using her hands.  However, Plaintiff's medical evidence does not support her claim of impairments in her musculoskeletal system.  As an example, Plaintiff's nurse practitioner, who examined her on a regular basis, found her to be "fairly physically fit" (R. at 108).  A consultative examination of Plaintiff

8

completed by State agency physician Dr. Kasprzak revealed she had good muscle strength in her upper extremities, with "good firm grips of both hands," normal range of motion in fingers, wrists, elbows, and shoulders, and easy movement of both hands behind her back and across her chest (R. at 192). Plaintiff also demonstrated good muscle strength in her lower extremities, with good peripheral pulses, and normal range of motion in her hips, knees, and ankles. Id.  The doctor noted Plaintiff's gait was within normal limits, and that she could get up on her heels and toes without difficulty. Id.  Plaintiff had a normal back configuration, with the ability to flex forward and laterally. Id. Her neurological examination revealed equal deep tendon reflexes in Plaintiff's upper and lower extremities, but with a diminished pinprick sensation several inches above her ankles. Id.  Plaintiff was able to get on and off the examining table without difficulty (R. at 191).  When Plaintiff's medical records were reviewed by a State agency analyst on October 6, 2003, the analyst opined Plaintiff would be capable of the demands of a full range of light work, as long as Plaintiff avoided concentrated exposure to dust, fumes, odors, or poor ventilation (R. at 194-199).  Further, Plaintiff's treating nurse practitioner assessed Plaintiff as capable of meeting the demands of light work (R. at 205-207).  From his decision, it is clear the ALJ carefully examined Plaintiff's medical evidence concerning her musculoskeletal system, including her reports of pain from sitting, standing, walking, and carpal tunnel syndrome, but found no impairment so severe that

either by itself, or in conjunction with Plaintiff's diabetes, asthma, and hypertension, would render Plaintiff totally disabled (R. at 14-17).

While Plaintiff claimed side effects from her medications, including irritability and fatigue, there is no information in her medical records that she raised these concerns with her physicians (R. at 107-221).

Further, the ALJ examined Plaintiff's activities of daily living and found those activities belied any significant impairment, either alone or in combination with all of her ailments (R. at 15-16). As an example, Plaintiff could cook, clean her home, shop for groceries and personal items, engage in hobbies such as painting by numbers, reading, crocheting, and watching television (R. at 97). She noted she had a friend she visited every other day (R. at 98). She testified she could walk approximately two miles in one-half to one hour (R. at 243). She stated she could sit for an hour or two, get up and walk around her apartment, and then return to a sitting position. Id. She noted she could carry about 10 pounds. Id. Plaintiff testified she took care of her personal needs such as bathing and dressing, but because of the length of her hair and its weight, needed some assistance with brushing it (R. at 244). These varied activities of daily living are inconsistent with Plaintiff's allegations of total disability.

It is clear to the Court that based on the content of the ALJ's decision, he carefully examined Plaintiff's medical record, but did not find objective signs to support Plaintiff's claim of totally disabling impairments. The ALJ considered Plaintiff's subjective complaints of pain and limitations,

along with her medical evidence, and afforded the complaints some weight in finding that Plaintiff could not return to her prior relevant employment as a deli worker, an occupation that required frequent lifting of heavy boxes (R. at 17). However, based on Plaintiff's medical records and subjective symptomatology, as well as her activities of daily living, the ALJ determined Plaintiff was not disabled and retained the residual functional capacity for a full range of light work. Id.  The ALJ did not state in the body of his decision that he did not find Plaintiff's testimony credible; however, it is apparent to the Court that through his thorough examination of Plaintiff's medical evidence and her testimony, the ALJ performed the requisite credibility analysis, and found Plaintiff's claims of debilitating pain and other limitations not credible (R. at 14-17).  The ALJ clearly articulated his reasons for finding Plaintiff not under a disability during the relevant time from for her claim within the body of his decision. Id.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  See Ber v. Celebrezze, 332 F.2d 293 (2d Cir. 1994).  Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony.  See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).  However, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the

11

symptomatology alleged.  See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).  In this case, there is no question Plaintiff's asthma, diabetes, and hypertension are severe impairments, but her reported symptoms, including depression, fatigue, side effects from medication, and carpal tunnel pain, suggest a greater restriction of function than would be indicated by the medical and other evidence in the record. Thus, the ALJ considered Plaintiff's daily activities, the type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate her symptoms, and any other measures she used to relieve pain (R. at 14-18).  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  The ALJ's decision shows he reviewed Plaintiff's complaints of pain, depression, fatigue, and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of total disability (R. at 14-18).

In sum, the Court finds the ALJ properly considered Plaintiff's pain, depression, fatigue, and other reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that her pain, depression, fatigue, and other symptoms are disabling.  Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, present an explicit summary of his evaluation, and render an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other

evidence (R. at 15-16).  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).

### The ALJ Failed to Develop Record Concerning Depression:

12. Plaintiff's second challenge to the ALJ's decision is that the ALJ failed to adequately develop the record and make a proper determination concerning Plaintiff's impairment of depression.  See Plaintiff's Brief, p. 1.  Specifically, Plaintiff alleges she was undergoing mental health treatment at the time of her hearing, and the ALJ ignored her testimony regarding her impairment of depression.  See Plaintiff's Brief, pp. 6-7.

Citing Batista v. Chater, Plaintiff notes an ALJ is obligated to develop psychiatric evidence where there exists some indication that the claimant has psychiatric problems.  See Batista v. Chater, 972 F. Supp. 211, 218 (S.D.N.Y. 1997).  In Batista, the plaintiff did not speak English, had a first grade education, and was unrepresented at his hearing.  Id. at 214.  There was much evidence at the time of the hearing that the plaintiff was undergoing mental health treatment, although treatment notes, test results, and the results of the plaintiff's mental status examination were not in the record.  Id. at 218-220.  The Batista court determined that given the facts of that case, the ALJ had a duty to extensively develop the plaintiff's record of his mental health treatment.  Id.  Because the ALJ in that case was aware critical evidence was missing from the record, the court found her decision was not based upon substantial evidence, as she failed to consider all the evidence that was available to her.  Id. at 222.

13

The facts in the instant case differ substantially from the facts in Batista.  In this matter, Plaintiff has a high school education and was represented by counsel at her hearing (R. at 234, 236).  Plaintiff's counsel had the opportunity to question Plaintiff about her mental health issues during the hearing (R. at 253-256).  Plaintiff testified that she felt depressed once or twice a week, and during those episodes she wanted to hide in a corner (R. at 254).  She claimed she was taking Wellbutrin to treat her depression and anxiety, and that the drug made her irritable with her brother and her boyfriend (R. at 254, 256).  When questioned by the ALJ about her history of psychiatric treatment, Plaintiff told the ALJ that she "went to mental health once" (R. at 255).

Neither the record in this case, nor Plaintiff's own testimony, put the ALJ on notice that he had a duty to further develop Plaintiff's psychiatric history.  While the medical record of State agency examining physician Dr. Kasprzak notes Plaintiff was hospitalized at the age of 23 for about a week because of suicidal tendencies, there was no further evidence of mental health treatment in the approximately 12 year period between that hospitalization and Dr. Kasprzak's examination (R. at 190).  In fact, Plaintiff told the disability determination services interviewer that she had not been seen by a doctor, hospital, clinic, or anyone else for emotional or mental problems that would limit her ability to work (R. at 84).

While Plaintiff claimed she was taking the anti-depressant Wellbutrin for the treatment of depression and anxiety, the drug had actually

14

been prescribed by her primary care physician and nurse practitioner as an aid for the cessation of smoking (R. at 86, 253).  The same nurse practitioner who treated Plaintiff on a regular basis for asthma, diabetes, hypertension, and smoking cessation, opined Plaintiff had "no real psychiatric issues that would preclude her from being involved in the workplace" (R. at 108).

State agency physician Dr. Kasprzak noted Plaintiff had been hospitalized with suicidal tendencies in her early twenties, and opined that she suppressed these tendencies over the years, but did not indicate Plaintiff had on-going mental health issues that would preclude her from employment activity (R. at 190).  In fact, Dr. Kasprzak assessed Plaintiff's "multiplicity of complaints" as impacting her employability only "slightly moderately" (R. at 193).

It is clear from the hearing transcript that both the ALJ and Plaintiff's counsel probed for information about Plaintiff's psychiatric history and on-going mental health problems, but there was simply no evidence she was being treated for depression, or any suggestion in the evidence that she should have been referred to a State agency psychiatrist for a consultative examination (R at 234-257).  Thus, the ALJ considered Plaintiff's allegation that she suffered from severe depression, completed the analysis of her symptoms and limitations as required by 20 C.F.R. 404, Subpart P, Appendix 1, Section12.00ff, and determined Plaintiff's depression was not severe (R. at 16).

The Court finds the ALJ did not ignore Plaintiff's claims of depression, as alleged by Plaintiff, but probed for signs that Plaintiff's depression was severe (R. at 253-254). Also, the ALJ did not err by failing to further develop the record pertaining to these claims as it is clear from Plaintiff's medical evidence, as well as her testimony, that she was not being treated for depression, or other mental health issues, during the time frame relevant to this claim. See 20 C.F.R. § 416,927(c). Thus, any further effort at development of this issue on the part of the ALJ would have been a waste of judicial resources.

### The ALJ Inappropriately Used "The Grids:"

13. Plaintiff's third challenge to the ALJ's decision is that he inappropriately used the Grids to determine the availability of jobs suitable for Plaintiff in the national economy. See Plaintiff's Brief, P. 1. Specifically, Plaintiff alleges the ALJ ignored her claims that she is unable to sit or stand for any length of time, is unable to walk any significant distance, and can only occasionally climb, kneel, crouch, or crawl. See Plaintiff's Brief, p. 8. The Plaintiff also notes she cannot work in areas where there are fumes, gases, odors, and dust. Id. Thus, Plaintiff claims the number of jobs available to her in the light work category within the national and local economy is so eroded that a vocational expert would be required to determine if any jobs existing in significant numbers would be available to her. Id.

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by

16

considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).  In this, and other SSI and DIB cases, the second part of this two part process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "The Grids").  See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  An ALJ may rely on the Grids for guidance in determining the range of work available to a claimant, even if the claimant has nonexertional limitations, as long as those limitations do not significantly erode the range of work that would otherwise be available to the claimant.  Id. at 605.

At step three of the five-step sequential evaluation, the ALJ determined Plaintiff had a number of impairments that either alone or in combination did not equal in severity the clinical criteria established in 20 C.F.R 404, Subpart P, Appendix 1, Regulations No. 4 (R. at 17).  However, at step four of the five-step sequential, the ALJ determined Plaintiff would not be able to return to her past relevant employment as a deli worker, a medium work activity that requires frequent heavy lifting.  Id.  In the first part of step five of the five-step sequential evaluation, the ALJ assessed Plaintiff's residual functional capacity, taking into consideration her medical findings, symptomatology, and activities of daily living, and determined that at most, Plaintiff would be capable of performing the full range of light work.  Id.  As

discussed in Section 11 above, there was no medical or other evidence that Plaintiff was unable to sit or stand for any significant amount of time, or was unable to walk distances that would be consistent with light work activity. However, the ALJ acknowledged Plaintiff had minor environmental limitations because of her asthma, and some postural limitations because of her obesity, lack of physical conditioning, and occasional back pain (R. at 16-17). Because such limitations have little or no impact on the light or sedentary world of work, the ALJ was permitted to rely on the Grids in the second part of the two parts of step five in the sequential evaluation to assess that there were a significant number of jobs in the light work category in both the national and local economy that Plaintiff could perform.  See SSR 83-10; SSR 85-15; see also Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986).

Thus, the Court finds the ALJ properly relied on the Grids when he made his determination that a significant number of jobs existed in the national and local economy that Plaintiff could perform.  Further, the ALJ was not required to engage the services of a vocational expert to assess the number of jobs in the national and local economy, because under the guidelines established in SSR 83-10 and SSR 85-15, the jobs available to Plaintiff in the light work category were not significantly eroded by her environmental and postural limitations.

## CONCLUSION

16. After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision in this case, including the

18

objective medical evidence and supported medical opinions. It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and nurse practitioner, and State agency medical examiner, and afforded Plaintiff's subjective claims of pain, depression, and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because it further finds that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

 IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

 FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

 FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

 SO ORDERED.                    Dated: February 8, 2008

                                 Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

19